Oral argument not to exceed 20 minutes per side, Mr. Frank, for the appellant. May it please the Court, Steve Frank on behalf of the appellant. Nearly 20 years ago, a divided panel of this court held that there was no privacy interest whatsoever in a booking photograph. And that has been the law in this circuit for 20 years. But a lot has changed in that last 20 years. First of all, two other circuit courts have rejected that holding, the 10th and the 11th Circuit. And this court, in its FOIA rulings, has reflected the broad concern for privacy that the Supreme Court has recognized in Reporters Committee and Favish. And also, the intervening Supreme Court decision in Favish helped define exactly what the public interest is. Plus, in that 20 years, of course, as we all know, the technological changes have been unbelievable. And matters that used to be obscure documents in a court somewhere, you can just put in a name and put in something and draw it up right away. And that has increased the privacy interest. So what I would like to focus on first, with the court's permission, is what I think is the first issue that the court should consider. And that is, did the first Detroit Free Press case get it right when it said that there was no privacy interest whatsoever? In our view, that's a fairly easy question. We think that the court got that wrong. And the reason is, you have to take into account what a very low threshold there is for having some kind of a privacy interest. That's not to say that privacy will prevail. That's another question that comes later. But the first question is, is there some privacy interest at all? The threshold is very low. The Supreme Court has said that it must be greater than de minimis. They have said that it must be non-trivial. So in effect, to hold that something has no privacy interest whatsoever is to say that any privacy interest is trivial. The courts have defined that in other terms, again using minimalistic terms such as slight, something, minor, small, non-zero. And our point is that regardless of how the court comes out in the end, in terms of balancing how strong a privacy interest it is, the court may not think it's the strongest privacy interest in the world, that there at least is a threshold privacy interest which makes Detroit Free Press wrong and would require the court to then look to see what the public interest is and balance the weight of those two things. Would there be a privacy interest in a sketch artist sketching a person who was being tried for the crime that one of these officers was indicted for? In the courtroom? In the courtroom, right. Would there be a privacy interest? Yeah, because you're starting out saying there's no privacy interest in a mug shot. Correct. And I'm trying to think of other instances where a depiction of one of these men would be made in connection with their criminal case. Okay. The answer, I'll directly answer the question which is yes, I think there would be a privacy interest. I think it would be extremely small. But then you'd have to ask yourself, well, I think it would, and I'll tell you why. The government has a bright line test for this. A plaintiff in this case has an amorphous idea of what meets this threshold test that would be very difficult for agencies to apply and for courts to apply. We have a bright line test and it comes directly from the Supreme Court. The Supreme Court and Reporters Committee says that privacy is information concerning his or her person which is not freely available to the public. It also says privacy encompasses the individual's control of information concerning his or her person. And the House report on the FOIA says the exhibition was intended to cover government records on an individual which can be identified as applying to that individual. So our bright line test is that personal identifying information, if it identifies a person personally by name, by picture, in some manner, that meets the minimal test of being more of a threshold test. So wouldn't that not mean that any government-held photograph of a person under any circumstances would be considered to be private information? It would identify them. Every word you use, that would occur in any situation where they have a photograph of a person. Is that correct? That's absolutely correct. So then, if we go to the could reasonably be expected to constitute an unwarranted invasion of personal privacy, does that have to be decided on a case-by-case basis in every instance? Or can you say that collectively, knowing what mugshots are like, what police have done to people, constitutes a warrant? Or would you say it has to be determined in every individual case? I would say it's an individual matter. It's the same way. I take your answer. So then I'll press my final point, which is, what do you say with respect to, obviously there are concerns raised where it is useful for the public to know how the government does business, that if the government has discretion to release them so that mugshots of a certain person put them in a particularly bad light, whether it's a really evil-looking street mugger, or whether it's Clive Bundy out in Nevada, they can release those when they want people to look bad, and they cannot release them, like for police officers, when they don't want them to look bad. So where does that take us? Plaintiff seems to suggest that the government has some kind of arbitrary and capricious ability to release when it looks good and not release when it doesn't. And that's just not the case. What the government does in this case of mugshots is what it does in every FOIA request under Exemption 6 and 7C. It does a balancing test. No, but it does it when the FOIA request comes in. Now, I recognize that their policy statement, that December 2012 policy statement, makes some good noises, but that's not necessarily the law. That is, isn't it pretty clear that on a day-by-day basis, the Marshals Service can provide mugshots to the public for reasons that it finds good and sufficient? No, that's not the case. In our affidavit of Ed Bordley, the Deputy General Counsel of the Marshals Service, and attached to that affidavit is the directives and guidelines of the Marshals Service, and also in our briefs, we have made it abundantly clear, and we are on the record, the government is on the record, that we do not release mugshots except for legitimate law enforcement purposes. You don't see, and plaintiff hasn't pointed out, a history of the Marshals Service releasing mugshots to make them look good or what have you. They've referenced some press releases, and that's true. We've issued press releases when we've captured notorious people. But there's not a history, and not only is there not a history, it is against the Marshals Service regulations, and we are in record over and over in this case as saying we do not release mugshots indiscriminately. It is not an arbitrary and capricious decision. What purpose would you have to release a mugshot? I'm sorry, Your Honor? What purpose would you have to release a mugshot? The main purpose that we do is for a law enforcement purpose. I don't understand what that is. The main reason for that would be if someone's a fugitive. In other words, if they've escaped from prison, we have their mugshot, it's a recent picture of what they looked like when they were booked, and we would use that to help capture a fugitive. And that's 99.9% of the times, if not 100%, that mugshots are released. Mr. Frank, the Free Press argues that the release of the mugshot serves a law enforcement purpose by showing the public that there may have been a false arrest, and they cite statistics that show a lot of people were falsely arrested. And by releasing the mugshots, it allows the public to determine whether this was a person or not. I mean, isn't that a legitimate law enforcement reason for the press to get the mugshot? No, the answer, I don't believe it is. False identity? The plaintiffs in this case, because there is really no public interest, public interest, I must emphasize, a lot of people, when I argue these cases, they take the sense of public interest as sort of a layman's term, like what the public is interested in, and that's what plaintiffs, they're a newspaper and we want to give the public what they're interested in. That is not the public interest that is defined in reporters' committee. It's to show what the government is up to. So plaintiffs have gone through a series, I counted 10 at the last time, 10 purported public interests, starting with determining whether or not the arrestee was competent to stand trial, to see whether he was smiling, to see if he was... Whether he was beat up, whether the mugshots showed that he was... Your Honor has... Black eyes, whether he is the right person. Your Honor, I didn't mean to dismiss those concerns, okay? Why aren't they legitimate concerns? Those were the concerns of Detroit Free Press 1. Indicta, okay, it was only indicta, the court didn't rechoose. But those were the two concerns. You arrest the wrong person, or somebody might have been abused, beat up while they were in detention. The problem was that was not alleged in Detroit Free Press 1. Those were not allegations in that case. They are not alleged here. We're establishing a categorical rule for all cases. I mean, you're seeking to enforce the privacy rights of all arrestees here. And to do that, we're doing a broad brush. And so I don't know if you can kind of pick and choose what's at issue in that case and what's at issue in this case when we're establishing a bright line, a broad rule for all cases. And that's what you're asking for, right? If I may correct, Your Honor, the government, I think, is trying to be reasonable in this situation by saying that we're going to conduct a balancing test. We do agree that in most cases there will be no reason, no public interest, to release mugshots. And we agree that the vast majority of them will not be released. However, where a plaintiff can make a showing that there is some public interest, for example, just come forward with a witness who said that they saw the police  that would show, perhaps, the need to release that mugshot. Wouldn't that place an undue and unfair burden on the requester for them to have to come in on a case-by-case basis, if you will, to make some prima facie or other showing to establish public interest? That really seems to run counter to the establishment of some broad rule that would give general guidance. I understand. And I just want to emphasize, and I don't want to prolong it, that we are not looking for a broad general rule here. The government isn't. Plaintiff seems to be, for some reason, trying to seek a categorical rule that all mugshots should be released. You're seeking a broad rule, but it's a broad restrictive rule saying that there's a privacy interest and you don't get it. That's the broad rule you want. And that's pretty broad. You don't get it. Mr. Frake, that's not what you're asking, as I understand it. You simply want there to be recognized some privacy interest, then you go to the balancing test. And the cases seem to say in Favish that there's got to be something more than a mere allegation in order to have the public interest then outweigh that privacy interest, however strong it may be. That's exactly right. That's all you want, isn't it? That's exactly right. And it has to be a significant public interest. Let me follow up on that. I mean, it seems to me that if you have somebody that's saying this person was beaten up in connection with their arrest and you want to get their photograph to corroborate that, that seems to me to be pretty easy. But what do you do with this allegation that we want to see mugshots to make sure it's the right person? Frankly, I don't even understand that argument, but assuming that you understand it better than I do, how is a mugshot going to show that one way or the other? I don't really know, I mean, how that would work. And there really hasn't been any allegations in any of these cases that you need to show a mugshot because the wrong person was arrested. If they brought that up, the Marshal Service would certainly need to take that into account to determine whether or not to release that mugshot, absolutely. Is your position that if you have a plausible request, that we've heard that all of the witness descriptions were of somebody that was 5'6", sort of very pale and had a scar, and we understand that the person that you've arrested looks completely different and we want the mugshot. If you got a request like that, what would you do with it? Well, I would say that the U.S. Marshal Service would have to take that into account, would have to investigate it, and if they thought that there was some substance to that, they might have to. I would also, let me just point out it, because it just slipped my mind and I don't want it to. There's such a thing as the Privacy Act, which adds strength. Can I just add something on this point? When would that happen, when you have the wrong person or the suspect's been abused, that the suspect wouldn't support the request? The privacy interest is gone. That's exactly what I was going to say. I can't imagine anyone saying, no, no, no, don't release the... I like jail. The last thing I want is for you to get the right guy. You anticipated my answer. The Privacy Act prohibits the disclosure of mugshots and other personally identifying information. It prohibits it. Okay, that's an added weight. But under the Privacy Act, a person can request their own record. So obviously if a person thinks that he is the wrong person, has been arrested or he has been abused, he can simply request his record under the Privacy Act and release it. Exactly right. Then the other parameter that you spoke of earlier is that it is something that is not freely available. Correct. Is that correct? Well, I'm struggling with mugshots that are available through the states. Detroit Free Press argues that at least 39 states grant open access, and my understanding is that includes all four states in this circuit. If mugshots are available through these state systems, explain to me how your FOIA request should be treated so differently. Yes. And that is a major point of plaintiff. And you know something? It has a certain intuitive appeal. I mean, even to me, to say, well, the states do it. You know, what's wrong with that? And the answer to that is that FOIA is a federal statute, and it is different from the state laws. The Supreme Court and Reporters Committee, although it looked at state laws to see what they do, and I think courts should look at state laws to see what the tradition is, the Supreme Court made it very clear that state law is not determinative of FOIA. FOIA is a different statute. Anytime a state has arrested an individual who is also charged federally, then you would automatically give those mugshots. Is that correct? No. No? I'm sorry, if I understand you. It's not your mugshot. It's a state mugshot. I'm sorry. I perhaps didn't understand. Did you say they're arrested by both? If there are, yes, if there are dual charges. And that's, okay, I now understand. And that answers actually a question that plaintiff suggested in one of their latest briefs when they showed the mugshots of these folks out in Oregon who had been arrested and charged both by state officials and by federal officials, but their mugshots were not released by federal marshals under the charges. I'm just assuming. I have been told they were not released by the Marshal Service, so I'm assuming they were released by the state under state law. And I'd just like to make one last point, if I might, about the state laws. You have to look at those 37 states and see what their law is. For example, Michigan, which is one of the states they list as being a state that booking photographs are open, has an entirely different law than the FOIA. It has the equivalent of FOIA Exemption 6, which is a lot more stringent than FOIA Exemption 7C. 7C is much more protective of privacy than 6, and Michigan only has that. So it's an entirely different standards that are being applied. Well, maybe one more question, and then... If I might... I wanted to ask you, who within the Marshal Service gets to exercise the discretion to perform the balancing test to perform which photos will be released? Who gets to do that? A very fine gentleman. I will mention his name because it's not a secret. He wrote the declaration in this case. I think he's Deputy General Counsel Ed Bordley. Of course, there's a staff of administrative people who make the first cuts, and then he makes the final cut, which is subject to an administrative appeal to the Office of Information and Privacy, which is a very distinguished unit within the Department of Justice. And a person can appeal to that unit, and then they can bring it to court. If I might have 30... Does a person get notice of their appeal rights? Absolutely. It's about to be released and all that? Absolutely. Yes. If their request is declined, they're given notice that they can appeal to OIP. Why don't you very briefly respond to Judge Donald? I don't think I answered Judge Donald. And if I could just 30 seconds. You made a point, and it's a good one, but the fact about putting the burden on the requester. And the fact of the matter is that that's what FOIA does. I mean, if you look at Reporters Committee and Favish and all these cases, Carilli and Jones out of this court, the FOIA requester does have to, in these Exemption 7C cases, come up with a public interest. It is their burden. It's the government's burden to show that there's a privacy interest, and we have in this case. But it is the requester's burden to come up with a public interest that is not just we want to sell newspapers, but is going to tell what the government is up to. And the fact of the matter is a mugshot, while it will tell a lot about an individual citizen, a lot, if you've looked at these mugshot sites, it doesn't say anything about what the government itself is doing. Thank you. Thank you, Mr. Franklin. Is this Judge Guy? Judge Guy. I'm sorry. Mr. Frank, Judge Guy has a question. Oh, I'm sorry. I just wanted to make sure that I understood your position. Are you essentially wanting us to rule that there is a privacy right in a mugshot, that the public interest can override it in certain circumstances, but the government determines that degree of public interest necessary to override? Is that a fair statement? Did you hear the question? I'm not sure. What I heard is can there still be a public interest that can override the privacy interest, and the government makes that determination? Is that essentially the question? I said is that what you're hoping we rule, that there is a privacy interest in mugshot, but that it can be overridden by the public interest, but the government determines what degree of public interest is necessary to override the privacy interest. That's correct, Your Honor. I don't think that is correct. I think what you said before and what your briefs say is the government interest is relevant. At DOJ, they balance the interest, but it's reviewable in court. As you get to court, the courts balance the government interest versus the privacy interest. Correct. If you have a chance, I want to make sure you answer Judge Guy's question. I think with Judge Sutton's assistance, I hope I answered Judge Guy's question. Thank you. That's fine. Okay. May it please the court, Robert Loeb for the Detroit Free Press. The government's position here really boils down to a policy argument, that disclosure of booking photos is unseemly, that it's embarrassing, and therefore should be rejected. This case isn't about what Mr. Frank or I or this court thinks is good policy. This is a statutory case. Is there any evidence of that? I mean, those are factual statements, and I see that in some of the opinions, including our procuring opinion that says booking photographs convey the sort of potentially embarrassing or harmful information. They capture the individual in his humiliating moments and all this stuff. There's no factual record for this case, is there? No, Your Honor. These are just gut reactions. Well, this is just supposition, is it not? Absolutely. And I've seen, we don't have any record evidence in this case of mug shots, right? We have non-record evidence of mug shots, and we've got the amicus brief by the Reporters Committee that have the historical mug shots of Al Capone and John Dillinger, and those guys, it's not embarrassing, humiliating. They're dressed up in their suits, they've got their hair combed, look like they're going to church. I mean, they're prepared for those mug shots, and if we were going to decide this on the basis that mug shots are inherently embarrassing or humiliating, shouldn't we have record of it as opposed to just making it up? I agree with you that you can't just accept that as a given. I don't. As a statutory matter, what the Supreme Court has said, that you need to look at Congress. Congress, this is not just privacy in the vacuum. Congress chose the words, invasion of personal privacy. Those are words found in tort law. Those are words found in the restatement of torts. And the Supreme Court has explained, when you're trying to give meaning to that tort language, what do you do? You don't just impose your own personal policy preferences based on your gut reaction as to what's offensive or not. You look instead to history, to common law, to state statutes. The Supreme Court in Favre said that's the backdrop you look at to see what Congress intended as to whether those implicate a— Mr. Loeb, we start with the question of whether or not, as in pre-press one, a person has no privacy interest in a mug shot. The physical image, I believe. Yes, Your Honor. I think the first question there is whether there's a cognizable invasion of personal property, of privacy, which is recognized by the common law in this context, which is recognized by state law, but recognized by history and tradition. In pre-press one, of course, this Court did what it did. But since then, two other circuits have weighed in on the concept. And neither of those circuits engaged in looking at those backdrop principles. So let's look at the first one, history. When Congress enacted this terminology, invasion of personal privacy, it was well aware that newspapers every day are printing—we have a statistic in our brief— 30 to 60 percent of the front page of the major newspapers every day contained a booking photo to identify the person being charged with a crime. They were ubiquitous. Just for a moment, could I interrupt you? And I'm sorry to do that, but we talked here about state versus federal mug shots. Does the free press have access or does it typically get everything it wishes from states? Mug shots? Absolutely. So the problem is only the ones you can't get from the Marshals Service. But then again, if you look at the backdrop, it's history, tradition. The next step is common law and state law. So you're looking at what did Congress mean? Was there a cognizable privacy interest expected in these booking photos? I mean, you're assuming that Congress just wanted to codify existing practice. I mean, it seems to beg the question whether they were trying, at least in this provision, to create more protections. We don't dispute there could be more protections. But the fact that what the government is arguing here is for a privacy interest which is wholly unmoored from common law, wholly unmoored from state law is— Let's say, number one, these can be embarrassing. Number two, these proceedings where these photographs are taken aren't open to the public. I mean, if we're asking whether there's even a trivial privacy interest, the first step in this, isn't embarrassment plus not public well on the way to saying, yeah, there might be a trivial interest at least? No, Your Honor. No? When the Supreme Court has analyzed these things, they've never found a case where they've established— What standards are we talking about? I mean— You look at FABISH. You look at the Reporters Committee. Each of those cases are looking to the touchstones of common law and state law. So in the Reporters Committee, they said, in RAMP sheets, we're going to recognize protection under 7C because 47 states have restricted dissemination. There's an expectation in the public that these are not going to be disseminated because the common law, the state law, is so well established. Here we have the complete opposite. The state law, the common law, is well established just the opposite, that there is a public right. The press and the public have a right to get the booking photos. You can't have a cognizable privacy interest, invasion of personal privacy, where it's not recognized by tort law, not recognized by state law. In fact, state law says the public and the press have a right to those photos identifying who the public is using their authority against. There's no state counterpart to the provision here, right? There is, Your Honor. In most states, we have a 7C type thing as opposed to a Section 6. 7C is being interpreted. There are analogs to 7C. I mean, you heard what Mr. Frank said. Absolutely. For example, about Michigan. Michigan's language is very similar, but we have 50 different states. But I think it's notable that the restatement of torts says there is no invasion of personal privacy by the government's disclosure, or the press's publication of a booking photo, and that the state laws are lined up, that they all have discretion to release the photos, and that in at least 37, I think 38 states, it's mandatory that they disclose it. That's the background that we're dealing with here. Let me ask you a question about this. You seem to agree that Reporters Committee controls this case. I wouldn't go that far. It provides some background principles. It supplies the correct test. Let's put it that way. I don't mean it controls in the sense, but it supplies the correct test. Do you disagree with that? That and as the test has been refined by Favish and by other Supreme Court cases, sure. Assuming for a moment that Reporters Committee supplies the test, what our prior Detroit Free Press precedent does is create a bright-line rule as opposed to permitting the application of the Reporters Committee balancing in a particular case because as a matter of law, there is no privacy interest in these booking photos in all cases. Is that correct? Is that an accurate description? I would take yes, but let me be with a footnote in that under Favish, they said the first step is to decide is there a cognizable privacy interest or not. This court in Detroit Free Press 1 was following Reporters Committee and was equally consistent with Favish. One of the questions here and perhaps a preliminary question is whether we should have such a bright-line rule that says that as a matter of law, there is no privacy interest or whether we should look to the interest in a particular case and balance those against the public interest. That would be, for me at least, the preliminary question in the analysis, not what other states do. We're jumping into the middle. In my mind, I'm reexamining what we did to begin with with that lens. Let me just jump in a couple of things on that. First, Reporters Committee and numerous other Supreme Court cases invite the lower courts to adopt categorical rules and not engage in ad hoc balancing in case by case, including Reporters Committee says 7C is specifically written in a way which is amenable to such rules. Second, you have to look at the context in which this arises. You asked the question about a sketch artist, which is a good question. I didn't ask that question. I'm sorry, Judge Moore. A lot of judges. In that circumstance, the person is in court, and I think Mr. Frank said there would be a privacy interest because this is a depiction of that person. The law is to the contrary. The law, if you look at a Fifth Circuit case, United States v. Columbia Broadcasting System from 1974, says there's a constitutional right for that sketch artist to be there and to sketch it. And you can't have a cognizable privacy interest if the sketch artist has a right under the Constitution to be there. So, counsel, I mean, that's between always and never. I can understand why you'd want always, since that's the current state of the law, and a change is not going to help your client, so I get that. But what about this as a way of thinking of both categorical balancing but paying attention to each set of facts? Obviously, if there's an escape, allegations of abuse, you're going to let mugshots out in that setting. But it seems to me the other one that would seem to be the most important is public figures. And that would seem to me to give a lot to the newspapers. I suspect it's not often you're asking for mugshots of people walking down Vine Street who've been arrested. It's usually someone who's in some capacity a public figure and First Amendment law, of course, already accounts for that. I know you prefer always. I get that. And I assume you'll keep arguing for always. But do you have a backup argument that there's a way to do this? So the public interest here, the first and foremost public interest, is the right to know who the government is prosecuting. The government has the awesome power of prosecution. You already know who they're prosecuting. They can't hide the who. Look at the indictment. The indictment tells you their names. So I see the name Sean Williams. One of the officers on a piece of paper doesn't mean anything to me. Sean Williams, I don't know if that's a man or if it's a woman. But I look at the picture of Sean Williams and I say, that's the officer who pulled me over. When Sean Williams comes to court, as was required under our first decision, you can take a picture then. It just won't be a mugshot, which is uniquely unflattering, uniquely prejudicial. Your Honor, the courts don't always allow photos to be taken in court. That's why we have the sketch artist situation. In criminal cases in federal court, you never can. Right, Your Honor. But when they enter or leave court, they're covering their faces with their jackets. They come in through the back. If they're in custody, you're never going to have a chance to take a picture of them because they'll come directly into court. Absolutely. But the tax analyst case says, the Supreme Court case says, that the fact that we could try to get the photo in a different way is irrelevant. This is a public record. The question is, do we have a right to it under FOIA or not? You're with always or never. No. We can walk through all the different public interests here, which are far more weighty than Mr. Frank is. When can you not get the mugshot? We are asking this court for a categorical rule, whether you're just looking at privacy interests or if you look at the public and the private interests. The public interests are complicated always. The categorical rule you want is no privacy interests, which means you always get it. That is all or nothing. Yes, and our backup argument is likewise a categorical one, that the privacy interests here are certainly diminished and the public interests are great, and those are generic interests which are going to apply in pretty much every case, and that there should be a general rule. So it's okay to go to the balancing test. Well, your first point is that there is no privacy interest. Absolutely. How does Paul v. Davis? Supreme Court says you've got to look at that backdrop of common law, state law, and constitutional law, and Paul v. Davis says, so we know not a cognizable privacy right under common law, not a cognizable right under state law of invasion of personal privacy, and we know under Paul v. Davis not a cognizable invasion of personal privacy as a matter of constitutional law. All of the backdrop principles that the Supreme Court said you look at and Favish and the Reporters Committee all add up to one answer, that there's no cognizable privacy interest. But if we get to the public interest, let's discuss the right of the public to know who's being prosecuted and whether there is a diminished privacy interest and a public interest in that context. And it's notable that these individuals, these four officers of Highland Park who were charged with intent to distribute six kilos of cocaine and for taking bribes and abusing folks, the Marshals Service and the FBI issued no less than three press releases regarding those individuals. So while they cry crocodile tears about embarrassing them, they're issuing press releases, which if you go to the internet you can find today, which detail their names, which detail the charges, but also their residence, their employment. If you look to the regulation the government cites in this brief, 50.2b3, which is the U.S. Marshals regulation about this, it says that they are regularly, well in these kind of press releases, well I'll say that a lot of personal information, not just the name and the charges, the age of the individual, their marital status, their employment, their residence. Why do they do that? Why do they issue these press releases? Why do they give that personal information out? It's because the people have a right to know who's being prosecuted and they recognize there's no cognizable privacy interest the individual has in this setting. His indictment's been unsealed, he's appeared in court, he's facing a felony charge by the government, he doesn't have a cognizable privacy interest in keeping his name silent. The press and the public have even a constitutional right to know who they're charging. And that includes hearing the information the government is willing to give out, but also seeing their image, which is a government record, identify them in a much more concrete way than a description of Sean Williams. You said constitutional right, but this is wholly under FOIA. You're not claiming a constitutional right to these mugshots. Right, Your Honor. So let me take you back to the question I asked your adversary, which was if we assume that it clears the hurdle of its sum invasion, we would then go to unwarranted invasion. And I asked him if that could be collected. He said no, it has to be on a case-by-case. Would you say that it can be collective and that there's some reason that warrants this invasion of some small amount of privacy? Yes, Your Honor. It can be looked at as a generic matter, and if the government has some specific case where there are greater privacy interests or reasons to doubt the public interest, it can act to the contrary. The government, it's... Is there a collective interest in not facilitating these mugshots.com websites that sell the removal of mugshots from the website? You don't see such websites dealing with names or pictures that are taken on the streets, but there certainly are. Or you challenge that there's not enough record of such websites. They've attached some material regarding those websites, Your Honor. But the question is first whether there's a... I'm just asking why that isn't a type of privacy interest that we could say collectively applies to this kind of item. It's something that people are willing to pay hundreds of dollars to remove. Why? They want to remove it for what seems like obvious reasons. You're just saying just ignore that? No, the Supreme Court has recognized that long after a conviction is over and the facts regarding the conviction have gone into obscurity, there could be some privacy interest, especially when they're collected like in a rap sheet. That interest about restricting these websites as being dealt with by state law and to restrict such extortionary sites, that doesn't... Just because it's being dealt with by state law doesn't suggest that those state laws aren't protecting a privacy interest. Seems like that's a concession that there's a privacy interest that they're protecting. Once it's a privacy interest, you could say we shouldn't facilitate those kinds of... You can extort people with true facts as well. I know an affair is going on, I'm going to extort him, it may be true, but it doesn't affect that it's an extortion. The privacy provision in FOIA isn't intended to protect things that can lead to extortion? That's what seems to me what privacy is all about. It is written on a background of what Congress would have understood was cognizable invasion of privacy. Congress understood that when you were charged with a felony in federal court or state court, the people have a right to know, and those release of booking photos by states are done... Many states have their own websites where they post their booking photos recognizing the people have a right to know. The other states have mandatory disclosure. I'm not sure what that proves for you. It shows that when Congress wrote this... Congress has to do the same thing? Maybe Congress wants to stop that kind of facilitation of extortion, and the states don't. So Congress gets to do that, right? Absolutely, Judge Rogers. And if Congress wants to write that statute, it can. But they say privacy, that's right in the statute, right? They say invasion of personal privacy, which has content in both tort law and the restatement, which has been understood under state law not to apply to the release of a booking photo, either by the state or the publication of the newspaper. Let me get to some of those... or any of them if you've studied. Can you say, does the law say that it's not an invasion at all, or does it say that there's a public interest that overrides it? I'm raising this because one view would be if 39 states say these mugshots can get out, there must be a large understanding that it isn't really an invasion of privacy. Or do they say specifically that there's a public interest that overrides it? Primarily they're on the privacy side, Your Honor, which is where the restatement is. The restatement says there's no cognizable invasion of privacy in the release of a booking photo. The restatement doesn't purport to speak to the provisions of FOIA, does it? No, but the Supreme Court has looked at the restatement in Reporters Committee. The Supreme Court has looked at the restatement in the most recent AT&T FOIA case. It looked at it in the Favish case. It looks at tradition, it looks to background. Congress did not give over the courts to give us what is your gut reaction of what privacy should be protected. If Congress wants to write a different statute and direct it at the problem that you identified about these other websites, or give additional protection about release of photos, it can so legislate. That is not this court's job. And if you're going to do that, if you're going to make these kind of policy arguments, you better direct them to the states. Because the states are releasing these photos on a regular basis and have their own websites. Let me just get a couple... No, Your Honor. This is a bigger policy issue than this before this court. And the arguments that Mr. Frank wants to make... If there's a policy argument that supports a particular federal statutory interpretation, why is the fact that a state has a different provision relevant to that? I'm not following that. It's that they're asking you to ignore the language of the statute, ignore the history, ignore the tradition that existed in 1974. You're asking to... No, that's what the government's asking you to do. They're saying... Well, I'm asking, why can't we look at policy interpreting a word like privacy? It's just a word, right? It's not... Right, that word... That word, what is the content of the word? Can we look at, we've got to get a dictionary, or can we think about why Congress was concerned about privacy? It seems to me one reason you would want to protect people's privacy is to protect those kinds of interests that, for instance, lead to extortion, right? It's something personal about me that I don't want people to know, so I'll pay to keep it from being known. And if you see that something like extortion is happening, why doesn't that suggest that maybe that's what Congress continues to be in my policy? That's my question. I'm sure there's good answers to that, but one of them can't be, well, that isn't what the states think. Well, part of it is that Congress didn't choose to use the word and say, judges, just interpret privacy however you think is the best policy. That's not what Congress did. It enacted the language, invasion of personal privacy, language found in tort law, language found in restatement, and the Supreme Court, interpreting this very same language, said as touchstones for interpreting that language, you look to history, look to tradition, to look to common law, look to that state law to inform what that language means. And all those things, there's a tradition that there's no cognizable interest in the release of these kind of photos. If Congress wants to take a different tact, it can. Let me get to, there were some misstatements about, on the public interest side. You're going to have to wind up pretty quickly because your time has expired. Thank you. Be brief if you would. So, Mr. Frank said that, first of all, they release the photo when there's law enforcement purposes that satisfy, that's not the test. The test is, of course, public interest, but both in the policy statement, and Mr. Frank said today, they're going to look at what serves the needs of the government, the law enforcement, and not... You don't think that's a public interest? The public interest... You don't think the public has an interest in law enforcement being able to proceed effectively? That's a subset of what, FOIA says you look at the public interest, which includes our right to oversee, to monitor who's coming into the system, how they're being treated, what their race, what their ethnicity is, also to see that they've got the right person. I think it's odd to think that the public didn't have an interest in how law enforcement carried out its work and whether it was able to do so effectively. But are you saying that those two are not consonant, that while it may be a public interest, that that doesn't really define the outer parameters of public interest? Absolutely, Your Honor. Even the Justice Department in their own policy statement, so if you look at Exhibit 1, which is attached to their summary judgment thing, they say that there is a public interest in allowing witnesses to come forward with information relating to the criminal proceeding. Of course, that's a public interest which is going to be implicated in every single case. You don't know about it. They say, we need to come up with evidence to show that's true. Only by publishing the booking photo, will people say, I know that guy, I was having a beer with him, I saw him at the bar, I look at that booking photo, I know he's the guy who I play poker with every Tuesday, I didn't know his full name, but now I see him, I know that he's a stand-up guy, I'm going to start a defense fund for him. Whatever it is, the public has a right to know their identity, and even the government recognizes itself in its own policy things. He says it's limited to fugitives. If you look at the same policy thing here, it says they release the photos as a practice when they capture a fugitive, when they want to brag to the public, we've got our man, when they want to have their picture of the Al Capones and all that. And lastly, there's a powerful element of these photos to show how the government's using its awesome powers. If you look at that picture of Rosa Parks, which is attached to the amicus brief of the Reporters Committee here, and you look at it, if you look at a story saying well Rosa Parks was arrested when she moved from her seat on the bus, that's one thing. You look at that picture of that woman, this frail woman, this elderly woman sitting there, this booking photo being taken place, and you can see and sense the abuse of governmental power in putting her through that process. So the words on the page don't serve the public purpose of letting the public know what the government is up to in the way the booking photo does. It's a public record. The Detroit Free Press has a right to monitor what the government is up to, to publish that to the public so they can see who's being prosecuted. The government calls it voyeurism. This is the opposite. That is the way the press plays its role in our democracy of oversight to see what the government is up to. Thank you, Mr. Logue. I think we fully appreciate your argument, certainly appreciate it. Frank, did you reserve rebuttal time? I would just like to make clear that what is before the court is not a policy argument. This is not Steve Frank saying, well, you know, I think we should coddle criminals, and that's the policy. Let's also keep in mind that under Detroit Free Press 1, the only people whose booking photographs are released are innocent people because one of the requirements of Detroit Free Press 1 is that it be an ongoing proceeding. So once you plead guilty or you're convicted, your photo is protected. I don't understand that about Detroit Free Press 1. But what I want to say is that we're not here as a policy matter. We're here strictly as a legal matter. I am here as a career Department of Justice lawyer defending not criminals and their mugshots or innocent people and their mugshots, but I am urging this court to apply the law of the Supreme Court in Reporters Committee and FABISH. Reporters Committee controls this case. Don't this result in people running in the press, running to court in almost every case? I mean, as I understand you, you're saying that the default rule is there's a privacy interest, and it's up to the requesting party to show that their need trumps that privacy interest. Yes, ma'am. And I don't hear you saying that it's a very high standard. I hear you saying that you have to make some sort of showing that there's a legitimate need that relates to what's the government up to. That's correct. Okay, so an example. Let's say someone's doing... They have a confidential source that says that the Marshal Service is roughing people up. They don't have particular people, and they want to go through the mugshots to see. What kind of a showing do they have to make to get those mugshots to see? The same kind of showing that would make any other kind of 7C case, as Judge Donald and I were talking about. They would explain what the public interest is, and they would back it up with whatever facts and evidence they have. Just to show you that the government's position is not as hardcore as made out to be, there's a lot of cases out there, and plaintiffs fail to cite them. I'm a little reluctant to cite maybe for the first time, but there's a lot of cases out there where courts have found there to be a minimal privacy interest, very minimal privacy interest, but held that the public interest overcame that. I mean, Malta AG, which you cited in our brief, is a good example. This was not mugshots and humiliating. You know what Malta AG involved? It involved whether or not they were going to disclose the amount of crops, crops on a farmer's farm, okay? And the court found that the number of crops on that farm implicated a privacy interest. Counsel, can you just answer my question? I'm sorry, I thought I had... What do you envision happening in that situation? They're making a claim that we have this... We have these reports that they're roughing people up, okay? They're not going to give you the source, and they want to see the photos from everybody that's brought in by a particular marshal. Okay. What kind of showing are they going to have to make to get them? I thought I had answered by saying that they would explain what the source of their knowledge is, if they have witnesses, if they have whatever. And also, Your Honour, let's keep in mind that Favish, which counsel mentioned several times, plays a big role in this, because Favish held that if the public interest is based upon an allegation of government misconduct, then the public interest showing must be higher, and it must be substantiated, and it's a higher requirement under Favish. Plaintiff doesn't allege to be making any kind of a charge or an allegation of public misconduct here. Their public interest is really zero. My question is, they say, after going through nine other public interests, that now number 10 is, who is the government arresting? As one of the judges said, we know who the government is arresting. They reported who the government's arresting. My question is, what does a mugshot, in all its humiliating nature, add to that fact? What does it add? Maybe it's good, maybe it's bad, but a bunch of mugshots could either say the government is arresting a lot of upstanding-looking people, that's good, or the government isn't arresting anybody except scraggly-looking people, and maybe that's bad. I'm not saying which side of it I'd be on, but you've got to say that that conveys more information about government policy than a list of names, doesn't it? Somewhat more. If the suggestion that the government interest here is, I mean that the public interest is, is to see whether the government is arresting well-dressed people or scraggly people. White people, black people? Well, I think that's, the scraggly versus not, because some people consider these mugshots to be critical of people who are addicted and who one day want to get off their addiction and move on with their life. That's part of the criminal justice system, which these mugshots, as Your Honor pointed out, that are available, and you can only get your name off of that by paying $500, and that's just for one website, it's $500 for every single website. People with addiction object to them because they look really bad when they're arrested. Mr. Frank, to answer your question about stake in identity, I've seen cases like this. They arrest John Smith, and they don't know that there are a lot of John Smiths, and until the mugshot is published in the Detroit Free Press, they've got the wrong John Smith. It does happen, and it happens more often than you would like. So that's a value of publishing the mugshots. The problem I have with your argument, and the reason I favor Detroit Free Press, one, is we're shifting the burden from... You want the burden on the people that want the photos as opposed... You want the government to be the default. The default here you want is the government's rule that you don't get the photos. Under Detroit Free Press, you get the photos unless you establish the exemption that it could reasonably be expected to constitute an unwarranted invasion of personal privacy. So the default rule is consistent with FOIA. FOIA is a statute for transparency of government that is intended to make the government transparent, subject to narrow, specific exemptions, which the Supreme Court says are interpreted narrowly, not broadly. Under your interpretation, you want a broad rule that government says as to booking photographs, no, they are not releasable at all unless you can establish to us what we want. And I think that's turning FOIA on its head. FOIA goes the opposite direction. And that's my problem. Your position, you give the government too much power by saying somebody's physical image is a privacy image. It is not, in my view. And I recognize federal courts take the view that we don't allow cameras and pictures in here, which makes no sense to me at all either. But that's the problem. Are we giving the government too much power if we adopt your view? Your Honor, I respect what you're saying. And isn't it contrary to the intent of FOIA? It is not, because as Your Honor has pointed out, there are exceptions. Aren't they narrowly construed rather than broadly? They are. However, 7C is considered to be the broadest, widest, most protective exemption of privacy in all of FOIA because of the way it's worded. And there's no question about that. I just want to make it clear that it's not you or me giving the government power. What we're doing is we are simply following reporters' committee, which gave the government the right to make these determinations. Reporters' committee doesn't concern booking photographs. I beg your pardon? Reporters' committee doesn't concern booking photographs. Well, not every case is directly on point. It deals with personally identifying information, which is what this is. I don't think a physical image is. That's all. I beg your pardon? I don't think a physical image is. Well, we agree to disagree. If you're on a public street, anybody can take a picture of you. They can take that picture and put it on their website. Absolutely. If you're in a public courtroom in a state courtroom, they can take a picture of you, too. Normally, if you're in a public place, you have no expectation of privacy as to your public image. Absolutely. This is not a public place. The booking station is. No, this is done privately. We're really running out of time. Could you give a 30-second answer to this question and sum up all of that? I've been doing this for three or four years now. I've yet to hear plaintiffs mention a single-circuit court case that found that where personal identifying information was at stake, that there was no privacy interest. I don't know of such a case. Only Detroit Free Press won. I've also been waiting for plaintiffs to actually confront the booking photograph and tell us, when we all think of a mugshot, what's the first thing that comes to your mind? A beautiful picture of your granddaughter? No. A criminal. A criminal. How about Al Capone's picture? How about Jim Cagney's picture? One last question. They looked great. Yes, absolutely. I don't say how we can say that as a matter of law. There is no factual record in this case for us to make a factual ruling that booking photographs as a matter of law are embarrassing, demeaning, or whatever you want us to rule, because we don't have a record. If I might just respond very quickly. In none of these FOIA cases is there a factual record. The Courts and Reporters Committee and all these other cases, they decide as a matter of law that sometimes crops, sometimes structures, names, addresses, what have you, raise the privacy interest. And it doesn't have to be proved factual. Here's the answer to your question. We've said that in a case. It's in the dissent in Free Press 1. That's all you have to read. Cites it. That is exactly right. Thank you very much, Mr. Frank, for your arguments. Thank you, Mr. Loeb, as well. We appreciate your arguments today. You may adjourn court.